**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Margarita Leon De Nunez,<br><br>Plaintiff,<br><br>v.<br><br>Commissioner of Social Security Administration,<br><br>Defendant. | No. CV-19-02593-PHX-SPL<br><br>**ORDER** |

At issue is the denial of Plaintiff Margarita Leon De Nunez's Applications for Disability Insurance Benefits and Supplemental Security Income Benefits by the Social Security Administration (SSA) under the Social Security Act (the Act). Plaintiff filed a Complaint (Doc. 1) with this Court seeking judicial review of that denial, and the Court now addresses Plaintiff's Opening Brief (Doc. 14, Pl. Br.), Defendant SSA Commissioner's Response Brief (Doc. 22, Def. Br.), and Plaintiff's Reply Brief (Doc. 23, Reply). The Court has reviewed the briefs and Administrative Record (Doc. 12, R.) and now reverses the Administrative Law Judge's (ALJ) decision (R. at 1012–25).

**I.  BACKGROUND**

Plaintiff filed an Application for Disability Insurance Benefits on December 12, 2012 for a period of disability beginning on April 15, 2011. (R. at 96–97.) Plaintiff also applied for Supplemental Security Income Benefits. (R. at 1012.) SSA denied her Disability Insurance Benefits Application initially on April 22, 2013, and upon

reconsideration on December 5, 2013. (R. at 121, 126.) After a hearing before an ALJ, Plaintiff's claim was denied again and she filed an appeal with this Court. (R. at 22–34, 1096–98.)

On January 8, 2018, the Court remanded Plaintiff's case back to the SSA for further proceedings. On November 15, 2018, Plaintiff again appeared before an ALJ for a hearing on her claims. The ALJ considered Plaintiff's Applications for Disability Insurance Benefits and Supplemental Security Income Benefits together. (R. at 1012.) On February 19, 2019, the ALJ denied Plaintiff's claims. (R. at 1012–25.)

The Court has reviewed the medical evidence in its entirety and finds it unnecessary to provide a complete summary here. The pertinent medical evidence will be discussed in addressing the issues raised by the parties. Upon considering the medical evidence and opinions, the ALJ evaluated Plaintiff's disability based on the following severe impairments: degenerative disc disease, status post cervical discectomy and fusion, bursitis, hiatal hernia, post laminectomy syndrome, lumbar degenerative disc disease, and gastroesophageal reflux disease. (R. at 1015.)

Ultimately, the ALJ evaluated the medical evidence and testimony and concluded that Plaintiff is not disabled. (R. at 1025.) The ALJ found that Plaintiff engaged in substantial gainful activity during 2011. (R. at 1014.) Next, the ALJ found that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1." (R. at 1017.) Accordingly, the ALJ found that Plaintiff has the residual functional capacity to perform light work "with the following additional limitations: [she] can frequently climb ramps and stairs and occasionally climb ladders, ropes and scaffolds. She can frequently balance, stoop, kneel, crouch and crawl." (R. at 1017.) However, after January 12, 2018, the ALJ found that Plaintiff "can lift and carry 21 to 50 pounds occasionally and 11 to 20 pounds frequently. She can sit for 6 hours, stand and walk for 4 hours each (2 hours at one time). The claimant can frequently reach, push and pull with her

left non-dominant upper extremity. The claimant can perform these activities continuously with her right upper extremity. She can have frequent exposure to unprotected heights, moving mechanical parts, operating a motor vehicle and be exposed to loud noise." (R. at 1017.) The ALJ found that Plaintiff could perform her past relevant work until January 12, 2018. (R. 1023.) After that date, the ALJ found she could perform other work that exists in significant numbers in the national economy. (R. at 1025.)

## II. LEGAL STANDARD

In determining whether to reverse an ALJ's decision, the district court reviews only those issues raised by the party challenging the decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). The Court may set aside the Commissioner's disability determination only if the determination is not supported by substantial evidence or is based on legal error. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is relevant evidence that a reasonable person might accept as adequate to support a conclusion considering the record as a whole. *Id.* To determine whether substantial evidence supports a decision, the court must consider the record as a whole. *Id.* Generally, "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (citations omitted).

To determine whether a claimant is disabled for purposes of the Act, the ALJ follows a five-step process. 20 C.F.R. § 404.1520(a). The claimant bears the burden of proof on the first four steps, but the burden shifts to the Commissioner at step five. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). At the first step, the ALJ determines whether the claimant is presently engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). *Id.* At step two, the ALJ determines whether the claimant has a "severe" medically determinable physical or mental impairment. 20 C.F.R. § 404.1520(a)(4)(ii). At step three, the ALJ considers whether the claimant's impairment or combination of impairments meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Part 404. 20 C.F.R. § 404.1520(a)(4)(iii). If so, the claimant is

automatically found to be disabled. *Id.* At step four, the ALJ assesses the claimant's residual functional capacity (RFC) and determines whether the claimant is still capable of performing past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). If not, the ALJ proceeds to the fifth and final step, where she determines whether the claimant can perform any other work in the national economy based on the claimant's RFC, age, education, and work experience. 20 C.F.R. § 404.1520(a)(4)(v). If not, the claimant is disabled. *Id*.

## III. ANALYSIS

Plaintiff raises two arguments for the Court's consideration. (Pl. Br. at 1.) First, Plaintiff argues that the ALJ improperly evaluated her symptom testimony. Second, Plaintiff argues that the ALJ improperly evaluated the opinion of her treating physician.[1] For the reasons that follow, the Court agrees with Plaintiff's arguments.

### A. The ALJ failed to provide clear and convincing reasons supported by substantial evidence for rejecting Plaintiff's symptom testimony.

The ALJ provided four reasons for rejecting Plaintiff's testimony. First, she concluded that Plaintiff was noncompliant with her treatment so her symptoms were not as limiting as alleged. (R. at 1019.) Second, she found that Plaintiff's daily activities, which included interstate travel and childcare, were inconsistent with her testimony. (R. at 1020.) Third, she found that Plaintiff's symptoms improved with treatment, so they were not as limiting as alleged. (R. at 1019.) Finally, she found that the objective medical evidence did not substantiate Plaintiff's allegations.

An ALJ performs a two-step analysis to evaluate a claimant's testimony regarding pain and symptoms. *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014). First, the ALJ evaluates whether the claimant has presented objective medical evidence of an impairment "which could reasonably be expected to produce the pain or symptoms alleged."

---

[1] Plaintiff also claims the ALJ errantly rejected the opinion of her examining physician, Dr. Angel Gomez. (Pl. Br. at 4.) Plaintiff is correct. However, that error was harmless. *See Molina v. Astrue*, 674 F.3d 1104, 1122 (9th Cir. 2012). Dr. Gomez's opinion was not favorable to Plaintiff, so the ALJ's rejection of that opinion was inconsequential to her ultimate nondisability determination.

- 4 -

*Lingenfelter v. Astrue*, 504 F.3d 1028, 1035–36 (9th Cir. 2007) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (*en banc*) (internal quotation marks omitted)). If the claimant presents such evidence then "the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." *Garrison*, 759 F.3d at 1014–15 (citing *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996)). This is the most demanding standard in Social Security cases. *Id.* at 1015. "In evaluating the credibility of pain testimony after a claimant produces objective medical evidence of an underlying impairment, an ALJ may not reject a claimant's subjective complaints based solely on a lack of medical evidence to fully corroborate the alleged severity of pain." *Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005).

### 1. There is not substantial evidence that Plaintiff was noncompliant with her treatment.

The ALJ first determined that Plaintiff was noncompliant with treatment, which suggested that her symptoms were not as severe as alleged. (R. at 1019.) To support this contention, the ALJ identified three occasions when Plaintiff tested negative for prescribed medications. (R. at 1019.) The ALJ also identified one instance when a provider did not prescribe opioid pain medication due to Plaintiff's contemporaneous morphine use and an inconsistency between how many Oxycodone pills she was prescribed and how many she had remaining. (R. at 1019, 1566.)

Noncompliance with treatment can be a valid reason to reject a claimant's testimony. *See* 20 C.F.R. § 404.1530(a) ("In order to get benefits, you must follow treatment prescribed by your medical source(s) if this treatment is expected to restore your ability to work."); *see also Fair v. Bowen*, 885 F.2d 597, 603 (noting that a claimant's failure to assert one "good" reason for failing to comply with treatment "can cast doubt on the sincerity of the claimant's pain testimony"). However, in this case substantial evidence does not support the ALJ's conclusion that Plaintiff was noncompliant with her treatment.

First, neither the ALJ nor Defendant provided a citation for one of the purported negative drug tests. (R. at 598, 1019.) That same medical record indicates that Plaintiff

was not experiencing relief from her medications and requested a change to her medications, which indicates her intent to comply with treatment. (R. at 598.) Additionally, with regard to the negative NORCO tests cited by the ALJ, the records indicate that the detection window is one to two days. (R. at 510.) Accordingly, Plaintiff could have been compliant and still tested negative. A few negative tests over several years is not substantial evidence. Moreover, Plaintiff experienced side effects due to her narcotic use, which proves that she, in fact, used her medications so much that they damaged other bodily systems. (R. at 614.) The ALJ acknowledged that Plaintiff had gastroparesis likely because of her narcotic use and that Plaintiff's gastroenterologist recommended coming off narcotics. (R. at 1020.) Thus, the ALJ acknowledged Plaintiff was using her narcotic medication, which is inconsistent with her conclusion that Plaintiff was not complying with her medication regimen. Furthermore, the ALJ's citation to a single instance when Plaintiff had fewer drugs than she was prescribed does not constitute substantial evidence. Therefore, the ALJ erred by rejecting Plaintiff's testimony for this reason.

### 2. The ALJ failed to explain why Plaintiff's daily activities were inconsistent with her alleged symptoms.

The ALJ found that Plaintiff's "daily activities were not as limited as would be expected given her reports of disabling symptoms and limitations." (R. at 1020.) Specifically, the ALJ cited Plaintiff's work caring for children and her travel as activities that undermined Plaintiff's allegations. (R. at 1020.) With respect to Plaintiff's childcare, the ALJ found that though her activities after 2011 did not constitute substantial gainful employment, they still undermined her claims because "[c]aring for young children can be very demanding both physically and emotionally." (R. at 1015, 1020.) As for her travel, the ALJ concluded that although "travel and disability are not necessarily inconsistent, the claimant's ability to travel in this case" supports the ALJ's conclusions that Plaintiff's limitations are not as severe as alleged. (R. at 1020.)

The ALJ's findings are not specific, and thus, are insufficient to reject Plaintiff's testimony. The ALJ must make findings that develop and clarify the extent to which a

claimant's activities are inconsistent with sustaining employment. *See Garrison*, 759 F.3d at 1016 ("We have repeatedly warned that ALJs must be especially cautious in concluding that daily activities are inconsistent with testimony about pain, because impairments that would unquestionably preclude work and all the pressures of a workplace environment will often be consistent with doing more than merely resting in bed all day."); *see also Fair*, 885 F.2d at 603.

Plaintiff's limited childcare activities did not constitute substantial gainful employment after 2011 and do not preclude her from disability benefits. 20 C.F.R. § 404.1520(a)(4)(i). Furthermore, the ALJ's finding that childcare *can* be demanding is not a specific finding that it *was* demanding in Plaintiff's case. Therefore, Plaintiff's childcare several years ago, without more specific findings by the ALJ, does not undermine her allegations.

Similarly, the ALJ's finding that Plaintiff's travel to Idaho and Mexico (to visit her sick father) do not undermine her allegations. (R. at 1020.) The ALJ notes that travel and disability are not necessarily inconsistent but does not explain why they are in this case. (R. at 1020.) Plaintiff testified that she had significant trouble while traveling to Idaho and that her daughter had to care for her on her trips. (R. at 1055–56.) Moreover, Plaintiff repeatedly visited the emergency room while in Idaho, which indicates that her impairments limited her even during travel. (R. at 871–956.) And without specific findings to the contrary, Plaintiff's travel to Mexico to visit her sick parent are not inconsistent with her testimony. Accordingly, the ALJ erred in rejecting her testimony because of her daily activities.

### 3. The record does not contain substantial evidence of Plaintiff's symptoms improving.

The ALJ cites several medical records which appear to support the conclusion that Plaintiff's symptoms improved or were managed with treatment, and thus were not as limiting as alleged. (R. at 1019.) Specifically, the ALJ noted one record in which Plaintiff reported that Methadone was working well for pain. (R. at 1019.) The ALJ cited another

record in which Plaintiff reported that a lumbar epidural provided some relief. (R. at 1019.) Finally, the ALJ cited Plaintiff's November 20, 2014 report that her medications were controlling her pain reasonably well.

Nonetheless, these isolated instances of improvement in Plaintiff's symptoms do not constitute substantial evidence. An ALJ may not reject a claimant's testimony with cherry-picked instances of partial or temporary improvement in the record. *See Garrison*, 759 F.3d at 1012-14; *see also Holohan v. Massanari*, 246 F.3d 1195, 1207 (9th Cir. 2001). Overall, the record demonstrates that Plaintiff's injections quickly wore off, her pain was chronic and uncontrolled, and her medication offered only partial and temporary relief and came with side effects. (R. at 571, 614, 873, 1056, 1407, 1502, 1510, 1535, 1552.) Accordingly, it was error for the ALJ to reject Plaintiff's testimony because of improvement in symptoms.

**4. The ALJ could not reject Plaintiff's testimony because of its purported inconsistency with the objective medical evidence unless the ALJ provided another valid reason for rejecting her testimony.**

The ALJ found that the "diagnostic tests and studies do not support the claimant's allegations" of disabling symptoms. (R. at 1020.) Nevertheless, the ALJ could not reject Plaintiff's testimony on this basis alone. *Burch*, 400 F.3d at 680. This is because "pain testimony may establish greater limitations than can medical evidence alone." *Id.* Because the other reasons the ALJ offered are insufficient, this reason stands alone and is necessarily insufficient. Furthermore, as discussed below, this reason is not backed by substantial evidence since the objective medical evidence supports Plaintiff's alleged limitations.

**B. The ALJ errantly rejected the opinion of Dr. Jason Cheng, Plaintiff's treating physician.**

Dr. Cheng completed two evaluations of Plaintiff's residual functional capacity. (R. at 667–68, 747–48.) On February 18, 2014, Dr. Cheng opined that Plaintiff's neck and back pain had a prognosis of "no improvement expected." (R. at 667.) Her symptoms included

left arm weakness and chronic neck and back pain, and these symptoms would interfere with her ability to perform simple, work-related tasks. (R. at 667.) He found that Plaintiff would be limited to sitting 15 minutes at a time, two hours per workday, and standing/walking 15 minutes at a time for one hour per workday. (R. 667.) He also opined to reaching and lifting limitations. (R. at 668.) Accordingly, he found that Plaintiff would be absent due to impairments more than four times a month. (R. at 668.) His second evaluation on May 30, 2014, was similar but contained diagnoses of post-laminectomy syndrome and cervical radiculopathy with a prognosis of "chronic ongoing." (R. at 747.)

The ALJ offered three reasons for rejecting Dr. Cheng's opinion.[2] First, the ALJ found that Dr. Cheng's "conclusions are not supported by treatment records or diagnostic studies." (R. at 1022.) Second, the ALJ found that there were "very few treatment records from this provider to review prior to [the evaluations] being filled out." (R. at 1022.) Finally, the ALJ found that Dr. Cheng did not explain the right-shoulder limitations he opined to. (R. at 1022.)

### 1. The ALJ's conclusion that Dr. Cheng's opinions are unsupported by the medical evidence is not supported by substantial evidence.

In concluding that the medical evidence does not support Dr. Cheng's opinions, the ALJ pointed to various records that she found "revealed largely unremarkable findings." These records include MRIs from 2014 through 2016, which contained evidence of small irregularities. (R. at 1022.) Further, the ALJ concluded that there was little change between MRIs taken in 2014 and 2015 compared with MRIs taken in 2016. (R. at 1022.)

However, the findings in the imaging studies are not as minor as the ALJ suggests, and they support Dr. Cheng's opinions. The MRIs revealed mild degenerative disc disease and a small protrusion with annular tearing. (R. at 1022.) Similarly, a thoracic spine x-ray

---

[2] The ALJ also found that Dr. Cheng's prognosis of no improvement was incorrect because the Court found that Plaintiff's symptoms improved with treatment and she was noncompliant with treatment. (R. at 1021–22.) However, as the Court discussed regarding the ALJ's consideration of Plaintiff's symptom testimony, Plaintiff was not noncompliant and did not improve with treatment. Accordingly, the ALJ could not reject Dr. Cheng's opinions on those bases.

taken in 2014 revealed mild degenerative disc disease. (R. at 1022.) That there was little change between MRIs taken at different dates is unpersuasive because the MRIs revealed degenerative changes at all dates.

Additionally, the ALJ did not rely on the latest imaging studies which reveal that Plaintiff's impairments are *worsening*. (R. at 1705–08.) MRIs taken on July 24, 2018, a few months before Plaintiff's hearing, were compared to her MRIs taken in 2016. The most recent MRIs revealed several defects in Plaintiff's cervical and lumbar spine. (R. at 1705–08.) Importantly, the examiner noted that Plaintiff's "[s]pondylosis [a]s seen in the upper thoracic spine at T1-2 and T2-3 [] appears worsened compared to the prior exam and is now causing mild canal narrowing at T1 [] and mild-to-moderate canal narrowing at T2-3." (R. at 1706.) Because the ALJ did not rely on the most recent imaging studies, and because all of the imaging studies support Dr. Cheng's opinions, the ALJ erred.

### 2. Dr. Cheng did not prematurely opine to Plaintiff's limitations.

The ALJ's finding that there were "very few treatment records from this provider to review prior to [the evaluations] being filled out," questions Dr. Cheng's treatment relationship with Plaintiff. (R. at 1022.) Indeed, the length of a provider's treatment relationship with a claimant is a valid consideration in determining the weight to give to the provider's opinion. 20 C.F.R. § 404.1527(c).

Nevertheless, Dr. Cheng's entire treatment history with Plaintiff reveals that his opinions were not made prematurely. He had three visits with Plaintiff before making the assessments. (R. at 368, 371, 464.) Moreover, another doctor at the same location saw Plaintiff before Dr. Cheng completed the assessments. (R. at 374.) And Dr. Cheng referred Plaintiff for imaging studies before completing the assessments. (R. at 380–81.) Finally, Dr. Cheng has a long treatment history with Plaintiff, which document similar impairments, symptoms, and limitations across many years. (R. at 368, 371, 464, 648, 656, 660, 1393, 1407, 1434, 1448, 1469, 1475, 1510, 1535, 1552.) Accordingly, Dr. Cheng established a sufficient treatment relationship with Plaintiff to reach his conclusions, so it was error for the ALJ to reject his opinions on this basis.

### 3. The right-arm limitations that Dr. Cheng opined to were substantiated in his records and documented by diagnostic imaging.

The ALJ's finding that the right-arm limitation that Dr. Cheng opined to is unsupported is two-pronged. (R. at 1022.) First, she found that it was contradicted by a nerve conduction study which revealed no evidence of radiculopathy or carpal tunnel syndrome. Second, she found that Dr. Cheng did not explain the restriction.

Although an explanation for a medical opinion can be helpful, it is dispensable where a limitation is well-documented in a treating physician's records. *See Garrison*, 759 F.3d at 1014. That is the case here. Over the course of Dr. Cheng's long treatment history with Plaintiff, all of his opined-to limitations are well-documented, including the right-arm limitations. Therefore, an explanation on the checkbox evaluations he completed was unnecessary.

Moreover, the ALJ's finding that the right-arm limitations are unsupported by the record is not supported by substantial evidence. The ALJ's conclusion relies on a single diagnostic study. (R. at 1022.) Thus, the ALJ overlooked diagnostic studies that revealed tendinosis, calcific tendinosis, fluid, a Hill-Sachs lesion, and a partial tear and impingement in the right shoulder. (R. at 826.) Accordingly, the ALJ erred in rejecting Dr. Chang's opined to limitations because of a lack of explanation and support.

### C. The proper remedy is to remand for a computation of benefits.

Plaintiff requests that the Court remand this case for a calculation of benefits because this is the second time this case has been before the Court and Plaintiff filed her application seven years ago. (Pl. Br. at 25.)

The credit-as-true rule, if applied here, would result in a remand of Plaintiff's case for a calculation and payment of benefits. *See Garrison*, 759 F.3d at 1020. It applies if each part of a three–part test is satisfied. *Id*. First, the record must have been fully developed and further administrative proceedings would serve no useful purpose. *Id*. Next, the ALJ must have failed to provide sufficient reasons for rejecting the claimant's testimony or

medical opinions. *Id*. Finally, if the improperly discredited evidence were credited as true, then the ALJ would be required to find the claimant disabled. *Id*. Even if all elements of the credit-as-true rule are met, the Court maintains "flexibility to remand for further proceedings when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled within the meaning of the Social Security Act." *Id.*

All the elements of the credit-as-true rule are met here. First, the record is fully and extensively developed such that no further proceedings would be useful. Second, the ALJ erred by rejecting Plaintiff's symptom testimony and Dr. Cheng's opinions without sufficient justification. Indeed, the record largely substantiates Plaintiff's testimony and Dr. Cheng's opinions. Finally, if the errantly rejected evidence was credited as true, the ALJ would be required to find Plaintiff disabled. The vocational expert testified that a person who would miss work more than four days per month would be less than full-time, and accordingly there would be no available work. (R. at 1063–64.) Dr. Cheng opined that Plaintiff has that limitation, so she would be disabled if his opinions were credited as true. (R. at 668.) Finally, the Court has no serious doubt that Plaintiff is disabled.

Because Plaintiff did not challenge the ALJ's determination that Plaintiff engaged in substantial gainful employment during 2011, the Court finds that Plaintiff was not disabled during that year. Accordingly, the Court's conclusions only apply after 2011.

**IT IS THEREFORE ORDERED** reversing the February 19, 2019 decision of the Administrative Law Judge. (R. at 1012–25.)

**IT IS FURTHER ORDERED** remanding this case to the Social Security Administration for a calculation of benefits beginning January 1st, 2012.

**IT IS FURTHER ORDERED** directing the Clerk to enter final judgment consistent with this Order and close this case.

Dated this 6th day of April, 2020.

Honorable Steven P. Logan
United States District Judge